# Exhibit 2



# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CLIVEN BUNDY,<br><br>Defendant. | CV-S-98-531-JBR (RJJ)<br><br><br><br>**ORDER** |

This matter comes before the Court on Defendant Cliven Bundy's ("Bundy") Motion to Dismiss (#4), Plaintiff's Motion for Summary Judgment (#11), and on Bundy's Motion to Strike Motion for Summary Judgment (#14). Oppositions and Replies were filed for all motions.

## I. BACKGROUND

The United States filed a Complaint (#1) on March 27, 1998 for injunctive relief to prevent Bundy's alleged unauthorized and unlawful grazing of livestock on property owned by the United States and administered by the Secretary of the Interior, Bureau of Land Management ("BLM"), and for trespass damages.

Beginning about 1954, Bundy or his father or both have grazed livestock on public lands owned by the United States and administered by the BLM. For several years, Bundy or his father applied to the BLM to use the Bunkerville Allotment ("Allotment") for livestock grazing and paid the BLM for the use of the Allotment. Beginning in March 1993, Bundy refused to pay the grazing bills or apply for use of the Allotment.

From 1973 or before until 1993, the BLM issued to Bundy's father and Bundy, as his father's representative, ephemeral grazing permits to graze livestock on the Allotment. Regions classed as ephemeral do not consistently produce forage, but periodically provide annual vegetation suitable for livestock grazing. 33 FED. REG. 18245. Before grazing on an ephemeral range, a person must submit an application to the BLM. The BLM will determine if adequate forage is available and that the use is consistent with all of the terms and conditions of the permit.

The last grazing fees paid by Bundy to the BLM was for the period of December 1, 1992 to February 28, 1993. *See* Exhibit 7 to #11, Mot. Summ. Jud. The last grazing application was for the same period. *See* Exhibit 8 to #11. The government contends Bundy did not have authorization to graze livestock on the Allotment after February 28, 1993.

On February 26, 1993, Bundy sent an Administrative Notice of Intent to the BLM, which stated his intent to graze cattle "pursuant to my vested grazing rights." *See* Exhibit 10 to #11. Bundy sent several more Administrative Notice[s] of Intent in the months that followed. On June 16, 1993, the BLM sent Bundy a letter informing him that his application had not been received to graze livestock for the June 15, 1993 to August 31, 1993 period. The BLM included another application for Bundy to fill out and return. *See* Exhibit 12 to #11. Bundy responded to the BLM letter with another Administrative Notice and Intent, stating, among other things, that the BLM has produced no documents showing it had jurisdiction over the public lands. *See* Exhibit 13 to #11. The BLM began trespass detection efforts at the end of June 1993.

On July 13, 1993, the BLM sent Bundy a Trespass Notice and Order to Remove and gave him ten days to respond. As requested by Bundy, the BLM informed Bundy in a July 27, 1993 letter that it would extend the response time to 30 days. On August 19, 1993, Bundy sent another Administrative Notice and Intent, stating the BLM lacked proof that it had jurisdiction. *See* Exhibit 16 to #11.

On January 24, 1994, the BLM delivered a Proposed Decision Order to Remove and Demand for Payment to Bundy by placing it on the dashboard of Bundy's vehicle while he was in

1 the vehicle. BLM officials allege that Bundy became agitated, walked out of his truck and accused
2 the BLM of harassing him. He then returned to his truck, threw the decision out of the window
3 and drove away. One of Bundy's sons then picked up the decision, tore it into pieces and threw it
4 on the ground.

5     On February 17, 1994, the BLM issued a final decision canceling Bundy's ephemeral range
6 grazing permit. On March 3, 1994, Bundy sent a check for $1,961.47 to Clark County for grazing
7 fees. The BLM calculated that this amount is equal to the amount Bundy would pay to graze 85
8 cattle on the Allotment for a 12-month period if the fees were paid to the BLM in advance. Clark
9 County returned the check to Bundy since it did not have jurisdiction over the Allotment.

10     In March and April of 1994, the BLM sent letters to Bundy requesting that he pay past due
11 bills for grazing fees. Bundy responded by sending more administrative notices. In December
12 1994, Bundy or his agents served a Constructive Notice on a contractor hired by the BLM to gather
13 wild horses and burros. In August 1995, the BLM sent Bundy another Trespass Notice and Order
14 to Remove. Bundy responded by sending a Constructive Notice and Order to Stop, in which he
15 again questioned the United States' authority to manage the Allotment. See Exhibit 28 to #11.

16     In September 1997, the BLM tried to set up a meeting with Bundy to resolve the trespasses,
17 but Bundy declined to meet with the BLM.

18     The government contends it could have impounded Bundy's livestock, but it took no action
19 because any action could have resulted in physical confrontation. Since the trespass detection
20 efforts began in late June of 1993, the BLM has kept a record of observed livestock grazing on the
21 Allotment.

22     On April 17, 1998, Bundy, a pro se defendant, filed his Answer and Motion to Dismiss
23 (#4). Bundy alleged that this Court lacks jurisdiction to hear the case. On July 22, 1998, the
24 United States filed a Motion for Summary Judgment (#11) requesting injunctive relief and
25 damages.
26

3

## II. DISCUSSION

A. <u>Subject Matter Jurisdiction</u>

Bundy appears to argue in his Motion to Dismiss (#4) that the Complaint (#1) should be dismissed because this Court lacks jurisdiction since Article IV of the Constitution cannot be imposed upon him. Bundy claims that he is a citizen of Nevada and not a citizen of a territory of the United States, and he also quotes religious texts. Bundy also brings in the Property Clause, the Commerce Clause and International Treaty laws. None of these statutes, laws or other citations is relevant to the jurisdictional issue.

Bundy is correct that federal courts have limited jurisdiction. However, this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345. Section 1331 provides that: "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Section 1345 provides that: "the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States ..." 28 U.S.C. § 1345; *United States v. State of Hawaii*, 832 F.2d 1116, 1117 (9th Cir. 1987).

This Court thus has subject matter jurisdiction under 28 U.S.C. § 1345 because this civil suit was commenced by the United States.

Federal laws regulating and managing federal public lands are involved in this case where the government alleges Bundy is grazing livestock on federal lands without authority and without paying the required fees. Congress enacted the Taylor Grazing Act ("TGA"), 48 Stat. 1269, as amended, 43 U.S.C. § 315(f), in 1934 to regulate and preserve the federal lands. *Public Lands Council v. Babbitt*, No. 96-80831998 WL 559362, at *1 (10th Cir. Sept. 1, 1998). Recognizing that the TGA had not adequately protected the federal lands, Congress in 1976 enacted the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1785. *Id.* at *2. The FLPMA provides that "the Attorney General may institute a civil action in any United States district court for an injunction or other appropriate order to prevent any person from utilizing public lands in

4

violation of regulations issued by the Secretary under this Act." 43 U.S.C. § 1733(b). This Court therefore has jurisdiction under the FLPMA.

In his Reply (#7), Bundy explains this action started in 1992 when he received a "Full Force and Effect Decision Bunkerville Allotment" from the BLM. Reply (#7), p. 5. The letter to which Bundy refers is in fact dated January 28, 1993. Bundy claims this "decision concerning the Desert Tortoise, if fully implemented, would lead to the end of ranching in Clark County," and his ranching days would be over. Reply (#7), p. 5. The decision from the BLM does not inform Bundy he can no longer graze livestock due to the protection of the Desert Tortoise, but instead reminds Bundy that his grazing permit would end at the end of the next month, February 1993, and the new permit application was attached to the decision. The decision informed Bundy the BLM would issue him a new ten-year federal grazing permit for the Bunkerville Allotment. Mot. Dism. (#4), Exh. E. The terms and conditions for the new federal grazing permit allowed for livestock grazing with some restrictions to be determined by the BLM. For example, if tortoises were found to be active in the early spring in a specific area, then grazing would not be allowed until the amount of spring ephemeral forage had grown to a sufficient amount.

Bundy alleges the BLM does not have "Constitutional authority" to make the full force and effect decision. The Property Clause of the United States Constitution gives Congress the power "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." *United States v. Gardner* ("*Gardner II*"), 107 F.3d 1314, 1318 (9th Cir. 1997); U.S. CONST. art. IV, § 3, cl.2. This Congressional power over the public lands is without limitations. *Gardner II*, 107 F.3d at 1318. Congress enacted the FLPMA, which instructs the Secretary of the Interior to manage through the BLM the public lands under the principles of multiple use and sustained yield. 43 U.S.C. § 1732(a). "Multiple use" requires managing the public lands and their resources so that they "best meet the present and future needs of the American people," and taking into account the long-term needs of future generations for renewable and nonrenewable resources, including recreation, timber, wildlife and fish and

5


scientific values. 43 U.S.C. § 1702(c). "Sustained yield" is defined as "the achievement and maintenance in perpetuity of a high-level annual or regular periodic output of the various renewable resources of the public lands consistent with multiple use." *Id.* § 1702(h).

The FLPMA provides the Secretary of the Interior with the authority to regulate grazing and issue grazing permits that require permittees to adhere to the terms and conditions of such permits. *Id.* § 1752(a). The Allotment is administered by the Secretary of the Interior through the BLM, thus the BLM had authority to issue the full force and effect decision. The Allotment where Bundy and his father before him have been grazing livestock is classed as an ephemeral region, which does not consistently produce forage. The BLM has authority under the FLPMA to place restrictions on grazing when the forage declines to a level that would defeat the goals of multiple use and sustained yield.

B. <u>Summary Judgment</u>

Summary judgment may be granted when, viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Acc. and Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991), "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *Matsushita*, 475 U.S. at 588-87; Fed.

6

1  R. Civ. P. 56(e). The nonmoving party may not rest upon the mere allegations or denials of his or
2  her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials
3  provided by Rule 56(e), showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; Fed.
4  R. Civ. P. 56(e). The evidence of the nonmoving party is to be believed, and all justifiable
5  inferences are to be drawn in the nonmoving party's favor. *Anderson*, 477 U.S. at 255; Fed. R.
6  Civ. P. 56(e).

7  Bundy argues in his Opposition to Motion for Summary Judgment (#14) that the Court
8  should strike the government's Motion for Summary Judgment (#11) because his Motion to
9  Dismiss (#4) has not been ruled upon and thus the government's motion is "premature and
10 unnecessary." Bundy's argument is unpersuasive. The plaintiff may move for summary judgment
11 at any time more than twenty days after the commencement of the action. Fed. R. Civ. P. 56(a); *G
12 & G Fire Sprinklers, Inc. v. Bradshaw*, Nos. 95-56639, 96-55194, 1998 WL 596442, at *9 (9th
13 Cir. September 10, 1998). The government filed the Complaint (#1) on March 27, 1998, and it
14 filed its Motion for Summary Judgment (#11) on July 22, 1998, almost four months later.

15 Bundy argues since this Court does not have jurisdiction, it must deny the Motion for
16 Summary Judgment (#11). Bundy's argument fails again. Bundy's citation of *Steel Co. v.
17 Citizens for a Better Environment*, 118 S. Ct. 1003 (1998), does not help his case. The Supreme
18 Court in *Steel* stated: "Without jurisdiction the court cannot proceed at all in any cause." *Id.* at
19 1012. The Steel Court frowned upon "hypothetical jurisdiction" where courts assume jurisdiction
20 for the purpose of deciding the merits of cases. *Id.* However, this Court is not assuming
21 jurisdiction where none exist; this Court has federal question jurisdiction and the United States is a
22 party. Therefore, Bundy's jurisdictional argument must fail.

23 C.  Federal Lands

24 Bundy argues the federal government cannot have authority over lands "inside an admitted
25 state." *See* Motion to Dismiss (#4), p. 10. That argument must fail because federal lands located
26 within states are federal territories under federal jurisdiction. The FLPMA provides:

7

> The term "public lands" means any land and interest in land owned by the United States within the several States and administered by the Secretary of the Interior through the Bureau of Land Management, without regard to how the United States acquired ownership, except –
>
> (1) lands located on the Outer Continental Shelf; and
> (2) lands held for the benefit of Indians, Aleuts, and Eskimos.

43 U.S.C. § 1702(e). The Bunkerville Allotment where Bundy is grazing his livestock falls within the definition of "public lands" administered by the Secretary of the Interior through the BLM.

    An examination of the history of the lands in question further establishes federal ownership. On May 13, 1846, the United States declared war on Mexico. The Treaty of Guadalupe Hidalgo ("Treaty"), 9 Stat. 922 (1848), which ended the war, was signed by the United States Congress on February 2, 1848 and ratified by the Mexican Congress on May 25, 1848.

    In the Treaty, Mexico ceded land to the United States, including land that is now Nevada. *Gardner II*, 107 F.3d at 1317. Where Mexico before the Treaty included land that is now California, Nevada, Arizona, New Mexico, Colorado, Texas and Utah, the Treaty drew the new boundary line starting at the Gulf of Mexico, opposite the mouth of the Rio Grande, following the river until the southern boundary of New Mexico, then westward until it touches the first branch of the River Gila River, then westward until it empties into the Colorado River, then to the Pacific Ocean. 9 Stat. 922, 926, Article V; *see also* Encyclopedia Britannica, Micropedia, 15th ed., vol. 5 at 528. The public lands in Nevada are the property of the United States because the United States has held title to those public lands since 1848, when Mexico ceded the land to the United States. *Gardner II*, 107 F.3d at 1318.

    Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Bundy has failed to make such a showing. He has set forth no specific facts showing a genuine factual issue for trial. *See Matsushita*, 475 U.S. at 588-87; Fed. R. Civ. P. 56(e). Although courts construe liberally

8

pleadings of pro se litigants such as Bundy in their favor, pro se litigants are still bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). As the nonmoving party, Bundy may not rest upon the mere allegations or denials of his pleadings, but he must produce specific facts, by affidavit or other evidentiary materials, showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256; Fed. R. Civ. P. 56(e). Bundy has produced no specific facts, but instead has argued that this Court has no jurisdiction. Bundy's failure to produce specific facts showing a genuine issue for trial gives the Court sufficient grounds to grant the Motion for Summary Judgment (#11).

D. Injunctive Relief

Injunctive relief is appropriate when the moving party shows irreparable injury will result and remedies at law are inadequate. *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998). The moving party must show actual success on the merits and the balance of equities favors injunctive relief. *Id.* As stated above, the United States owns the Allotment where Bundy is grazing his livestock. Bundy is therefore trespassing upon United States property. Trespass is defined as entering the real property of another without the owner's permission or invitation. *United States v. Gardner* ("*Gardner I*"), 903 F. Supp. 1394, 1402 (D. Nev. 1995) (citing RESTATEMENT SECOND OF TORTS, §§ 158-59). The Restatement of Torts provides that:

> One is subject to liability to another for trespass... if he intentionally
> (a) enters land in the possession of the other, or causes a thing ... to do so, or
> (b) remains on the land, or
> (c) fails to remove from the land a thing which he is under a duty to remove.

RESTATEMENT SECOND OF TORTS, §§ 158-59. Grazing on federal public lands without a permit is a grazing trespass. *Holland Livestock Ranch v. United States*, 655 F.2d 1002, 1005 (9th Cir. 1981).

*Gardner I* had facts similar to this case, where the defendants grazed livestock without authority. A permanent injunction was entered against the defendants; they were ordered to

9

remove the livestock, and pay the owed grazing fees. *Gardner I*, 903 F. Supp. at 1403. As in *Gardner I*, the United States prevails in this case on the merits since Bundy is trespassing. The other component of the test requiring a showing of irreparable injury and inadequate remedies at law has also been met by the United States. Bundy has been grazing his livestock on the Allotment without a permit since March 1993, and he has informed the BLM in several "administrative notices" that he intends to graze cattle "pursuant to my vested grazing rights." *See* Exhibit 10 to #11. Despite numerous trespass notices and demands for payment from the BLM, Bundy has grazed livestock on the Allotment. Irreparable harm is established in cases of continuing trespasses. *See, e.g., Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 892 (1st Cir. 1988)(a continuing trespass on real property can properly be enjoined); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989)(defendants' stated intent to continue illegal actions showed harm was of a continuing nature and permanent injunction properly issued).

Section 4140.1 of the Code of Federal Regulations prohibits unauthorized grazing of livestock on public lands. 43 C.F.R. § 4140.1(b)(1)(i) (1998). Any person who violates the grazing regulations as set forth under 43 C.F.R. § 4140.1(b) is subject to civil and criminal penalties. 43 C.F.R. §§ 4140.1(b), 4170.1, 4170.2. The regulations provide that the settlement for repeated willful violations is three times the value of the forage consumed by the livestock as determined by the average monthly rate per AUM (animal unit month)[1]. 43 C.F.R. § 4150.3. The BLM is also authorized to impound and dispose of the unauthorized livestock after written notice of intent to impound. 43 C.F.R. §§ 4150.2, 4150.4, 4150.4-1, 4150.4-2; *see also Klump v. United States*, 38 Fed. Cl. 243 (1997)(government had not violated takings clause in impounding cattle as sanction for unauthorized grazing on federal lands). The government alleges that the BLM has not impounded Bundy's livestock due to its anticipation the action could result in physical confrontation. *See* Mot. Summ. Jud., #11, pp. 11-12. For over five years, Bundy has been

---

[1] An animal unit month is the amount of forage necessary for the sustenance of one cow for one month.

10

trespassing on public lands and his livestock have consumed forage. The government has shown commendable restraint in allowing this trespass to continue for so long without impounding Bundy's livestock.

### III. CONCLUSION

This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1345. The United States owns the Allotment where Bundy is grazing livestock without authority. Since Bundy is in trespass on public lands,

IT IS ORDERED that Defendant's Motion to Dismiss (#4) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (#11) is GRANTED as to the permanent injunction.

IT IS FURTHER ORDERED that Bundy is permanently enjoined from grazing his livestock within the Bunkerville Allotment and shall remove his livestock from this allotment on or before November 30, 1998.

IT IS FURTHER ORDERED that Plaintiff United States shall be entitled to trespass damages from Bundy in the amount of $200.00 per day per head for any livestock belonging to Bundy remaining on the Bunkerville Allotment after November 30, 1998.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Motion for Summary Judgment (#14) is DENIED.

The Clerk shall enter judgment accordingly.

DATED this 3rd day of November, 1998.

JOHNNIE B. RAWLINSON
United States District Judge