1

2

Marquiz Law Office
Professional Corporation

3088 Via Flaminia Court
Henderson, NV 89052
Phone: (702) 263-5533
Fax: (702) 263-5532
Craig A. Marquiz, Esq.
NV Bar #7437
MarquizLaw@cox.net

Attorney for Plaintiffs

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

| | |
|---|---|
| JOSEPH O'SHAUGHNESSY, et al. | Case No.:    2:20-cv-01039-WQH-EJY |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA et al., | |
| Defendants. | |

11

12

13

14

15

16

| | |
|---|---|
| TODD C. ENGEL, | Case No.:    2:20-cv-01040-WQH-EJY |
| Plaintiff, | **PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS (O'SHAUGHNESSY DKT. 26 & ENGEL DKT. 19)** |
| v. | |
| UNITED STATES OF AMERICA *et al.*, | **PLAINTIFFS' REQUESTS FOR JUDICIAL NOTICE** |
| Defendant. | **&** |
| | **PLAINTIFFS' REQUESTS FOR FED.R.CIV.P. 56(D) RELIEF** |

17

18

19

20

21

22

23

24

25

26

Plaintiffs Joseph O'Shaughnessy, Jason D. Woods, Mel Bundy and Dave Bundy

27

(hereinafter the "Tier 2 Plaintiffs") and the Bundy Family Members (i.e., Marylynn Bundy,

28

Briana Bundy, Brett Roy Bundy, Maysa Lynn Bundy, Dally Anne Bundy, Bronco Cliven Bundy,

Payton Alma Bundy, Piper Bodel Bundy, Montana Bundy, Bentile Bundy, Presly Bundy, Kymber

Bundy and Adahlen Bundy) hereinafter collectively "the O'Shaughnessy Plaintiffs" and Todd

Engel ("Engel" - the Related Action Plaintiff), respectfully submit their Consolidated Opposition

to the United States Motions to Dismiss (O'Shaughnessy Dkt. 26; Engel Dkt. 19).  Given the

nearly identical legal arguments advanced by the United States, common underlying facts and

related claims,[1] Plaintiffs respectfully submit that one Consolidated Opposition brief addressing

all matters serves to streamline the Court's review and evaluation process, and enables the entire

record to be viewed at the same time as a matter of judicial economy.

As detailed in the accompanying Declaration of undersigned counsel ("Marquiz Dec." -

Exhibit A), however, considerable discovery must be completed before Plaintiffs can fully

respond to the arguments advanced by the Government in its moving papers.  Notably, critical

evidence necessary to establish, among other things:  the egregiousness of the Government's

conduct; its knowing and intentional use of fabricated evidence; its purposeful withholding,

suppression / non-disclosure and destruction of exculpatory *Brady* materials in connection with

the arrest, detention and prosecution of Engel and the Tier 2 Defendants.  This information is,

and at all material times has remained, in the sole custody, possession and control of the United

States.  Based upon a Protective Order[2] entered in the Underlying Action, undersigned counsel

does not yet have access to the non-public records or evidence disclosed by the Government in

the Underlying Action, including, without limitation, transcripts and exhibits from all Grand Jury

proceedings; a listing of all exculpatory evidence withheld or otherwise suppressed by the

Government; or an itemization of all evidence known to have been destroyed or shredded by the

Government and its employees / agents.  Consequently, this forces Plaintiffs to respond to the

---

[1]      The O'Shaughnessy and Engel matters both assert five claims against the United States under the Federal Tort Claims Act ("FTCA"), including four common claims (i.e., false arrest, false imprisonment, malicious prosecution of intentional infliction of emotional distress) and one claim unique to each action (i.e., a loss of consortium claim in O'Shaughnessy and a theft / conversion claim in Engel).

[2]      The Protective Order (Dkt. 609) expressly precludes undersigned counsel's access to relevant motions and exhibits filed under seal or otherwise subject to that Order – which encompasses virtually all discovery produced by the Government and not otherwise available to the public on Pacer.

instant Motions without the benefit of same, severely prejudices Plaintiffs and undermines the clear mandate of Fed.R.Civ.P. Rule 1.

Although Plaintiffs' Consolidated Opposition does raise several arguments that undermine Defendant's Motions, until the entire record from the Underlying Action is produced and Plaintiffs have the opportunity to complete the discovery set forth in undersigned counsel's Declaration, Plaintiffs are unable to fully respond thereto.  To that end, Plaintiffs have identified the specific discovery necessary to fully respond to the instant Motions, an anticipated time-line to complete that discovery, and the anticipated results that said discovery is expected to provide. Further, once that discovery has been completed, Plaintiffs respectfully request the opportunity to present supplemental briefing regarding same.

Plaintiffs also request that the Court take judicial notice of various publicly-filed documents in the Underlying Action and related appeals before the Ninth Circuit Court of Appeals.  Those materials, referenced in or otherwise attached to the supporting Declarations of undersigned counsel and Warren Markowitz, Esq. (Mr. Engel's post-trial / appellate counsel in the Underlying Action - Exhibit B) irrefutably confirm the absence of probable cause to arrest, detain and prosecute Engel and the Tier 2 Plaintiffs, highlights the existence of other evidence and underscores the need for discovery related thereto before Plaintiffs can fully respond to the arguments raised in the Government's Motions.

Plaintiffs also concurrently move to exceed the 30-page limitation for Opposition briefs. In particular, due to the voluminous nature of the publicly available record now available on Pacer, undersigned counsel took the liberty of summarizing key evidence from the Underlying Action and related appeals to facilitate the Court's evaluation of same.  To that end, undersigned counsel's forty-one (41) page Declaration is submitted in furtherance of Plaintiffs' requests: (a) for judicial notice; (b) the need to conduct discovery pursuant to Fed.R.Civ.P. 56(d) before Plaintiffs can fully respond to the Defendant's arguments and establish the absence of probable cause to arrest, detain and prosecute; and (c) provides the Court with a time-line to complete the requested discovery and the anticipated results of same.  In this regard, although the public record does confirm that the Government's 2014 Cattle Impoundment Operation was neither authorized

nor lawful (i.e., based upon the Government's failure to provide the statutorily-required pre-impoundment notice mandated by 43 CFR 4150.4-1(a) prior Orders from this District, the true nature and extent of the Government's malicious conduct cannot be ascertained until such time as:  (a) the Grand Jury records are produced along with all withheld / previously non-disclosed exculpatory materials establishing the Plaintiffs' innocence; (b) a listing of all destroyed / shredded or missing evidence identified by the Government relative to the Underlying Action is provided; (c) various Fed.R.Civ.P. 30(b)(6) depositions are completed of representatives from the various federal agencies involved.

Plaintiffs' Consolidated Opposition is supported by the accompanying Memorandum of Points and Authorities, the Declaration of undersigned counsel (Exhibit A), the Declaration of Warren Markowitz, Esq. (Exhibit B), and the record from the Underlying Action and related appeals to the Ninth Circuit Court of Appeals.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction & Standard of Review

In yet another transparent attempt to rewrite history, the Government continues to cavalierly disregard the egregiousness of its conduct in the Underlying Action[3] by, once again, baldly attempting to refocus the discussion from what is actually before this Court into a self-serving justification for its conduct and the twenty-five year war it has waged against Cliven Bundy (the father of Tier 2 Plaintiffs Mel Bundy and Dave Bundy) over grazing permits and trespassing cattle.  The evidence set forth in Plaintiffs' supporting declarations highlights the egregiousness of the Government's conduct; the absence of probable cause to arrest, detain and

---

[3]    *United States v. Bundy et al.*, Case No. 2:16-cr-00046-GMN-PAL ("Underlying Action") - a sham proceeding which wrongfully forced Engel and the Tier 2 Defendants to endure fifty-four (54) months and twenty-three (23) months of incarceration and monitoring, respectively – mostly at a sweltering federal-contractor prison in Pahrump, Nevada and, for Engel, also at one in Lompoc, California – and which caused severe emotional, physical, mental, occupational and financial distress for said Plaintiffs and the Bundy Family Members. *See* O'Shaughnessy Complaint Dkt. 1 ("O'Shaughnessy") at ¶ 7 and Engel Complaint Dkt. 1 ("Engel"), at ¶ 4.  Those damages and injuries continue to this day.  *Id.*; *see also* Statement of the Case (O'Shaughnessy at ¶¶ 19 - 134; Engel at ¶¶ 7 - 106).

prosecute Plaintiffs; and the need for discovery before Plaintiffs can fully respond to the arguments raised in the Government's moving papers.[4]

The Government's jurisdictional and substantive challenges, however are devoid of merit, and the United States need look no farther than the law of this case and the binding Judgment which prohibits them from challenging or otherwise denying its "***flagrant prosecutorial misconduct***," "***outrageous conduct, amounting to a due process violation***" and a "***reckless disregard for [its] Constitution[al] obligations***" with respect to Engel's and the O'Shaughnessy Plaintiffs' affirmative claims for relief (i.e., O'Shaughnessy at ¶¶ 135 - 145; Engel at ¶¶ 107 - 116 ).[5]  Notably, after BLM Special Agent Larry Wooten's "Whistleblower Complaint" was uncovered and the egregiousness of the Defendant's conspiracy was on the heels of being exposed,[6] the United States voluntarily moved to dismiss, with prejudice, their fabricated claims against the Tier 2 Plaintiffs on February 7, 2018 (Dkt. 3178). Marquiz Dec., Exhibit A.  Further, after the Ninth Circuit vacated Mr. Engel's conviction on Counts 12 and 16 of the Superseding Indictment,[7] the United States filed an Unopposed Motion for Leave to Dismiss that was granted

---

[4]     Notably, on August 6, 2020 (more than 45 days before the Defendant's Motion to Dismiss and Joinder were filed), the Ninth Circuit Court of Appeals affirmed Judge Navarro's dismissal of the indictment against Cliven Bundy and the other Tier 1 Defendants for the government's *Brady* violations. *See* Marquiz Dec., Exhibit A, at ¶ 40; *see also* Opinion, Exhibit A-24.  *United States v. Bundy*, 968 F.3d 1019, 1045 (9th Cir. 2020) (holding "[t]he district court can dismiss an indictment under its supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right, (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury, and (3) to deter future illegal conduct.'" [*citing United States v.] Struckman*, 611 F.3d [560,] [(9th Cir. 2010)].

[5]     *See* Marquiz Dec., Exhibit A, at ¶¶ 38 - 39; *see also* Transcript of Proceedings dated January 8, 2018 (Dkt. 3122), Exhibit A-23; *Callan v. New York Community Bank*, 643 Fed.Appx. 666, 667 (9th Cir. 2016) (claims barred by doctrine of res judicata) (*quoting Reyn's Pasta Bella, LLC v. USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

[6]     *See* Marquiz Dec., Exhibit A, at ¶¶ 30 - 36; *see also* O'Shaughnessy at ¶ 128.

[7]     In its Motion against Mr. Engel, the Government speciously attempts to validate its rogue prosecution of him by referencing information he gave during closing arguments, various Facebook posts it obtained *after* the 2014 Cattle Impoundment Operation, and extraneous newspaper articles / photographs of him during his time on site  – evidence that must be viewed based upon the totality of the record once it has been produced and only *after* discovery is

5

that same day. Marquiz Dec., Exhibit A, at ¶¶ 43 - 44; *see also* Opinion, Exhibit A-25; Order, Exhibit A-227.

Moreover, the District Court's January 8, 2018 Order, a final judgment on the merits,[8] prohibits the United States from re-litigating or challenging those matters and, as such, its Motions to Dismiss should be summarily denied as a matter of law.[9]  Alternatively, the Court's ruling thereon should be stayed pending Plaintiffs' completion of the requested discovery and, thereafter, supplemental briefing presented regarding same.

## II.    Defendant's Rule 12(b)(1) Jurisdictional Challenges Are Misplaced

As the United States notes, "[a] Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  In these challenges, the court should "assume [the

_____

obtained of those matters which the United States intentionally suppressed or otherwise willfully failed to disclose during discovery, several of which came to light *after* he was prosecuted and convicted.  Thus, the Government's critical tone and erroneous arguments as to what Mr. Engel is permitted to assert in this matter (i.e., once a complete record has been obtained) versus the Government's myopic, limited and incomplete record that it surreptitiously presented in the Grand Jury proceedings and Tier 3 trial are two different things.  As detailed more specifically herein, Mr. Engel's FTCA claims, like those of the O'Shaughnessy Plaintiffs, are not barred nor limited by the Government's misplaced jurisdictional and substantive attacks.  Plaintiffs have validly stated claims for FTCA Claims for relief and those claims are properly before this Honorable Court.

[8]    *See Mason v. Dept. of Defense*, 821 Fed.Appx. 888, 889 (9th Cir. 2020) (*citing Leon v. IDX Sys. Corp.*, 464 F.3d 951, 962 (9th Cir. 2006) (dismissal with prejudice is a final judgment on the merits); *see also Hells Cyn. Preserv. Counsel v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("'[F]inal judgment in the merits' is synonymous with 'dismissal with prejudice.'")

[9]    "The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* (*citing Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876)).  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* (*citing Montana v. United States*, 440 U.S. 147, 153 (1979)).  "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* (*citing Montana*, 440 U.S. at 153-154).

1   plaintiff's allegations] to be true and draw all reasonable inferences in his favor." *Wolfe v.*
2   *Stankman*, 392 F.3d 358, 362 (9th Cir. 2004).

3          "By contrast, in a factual attack, the challenger disputes the truth of the allegations that,
4   by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone,* 373 F.3d at
5   1039.  "In resolving a factual attack on jurisdiction, the district court may review evidence
6   beyond the complaint without converting the motion to dismiss into a motion for summary
7   judgment." *Id.* (*citing Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir.
8   2003).  Further, "the court need not presume the truthfulness of the plaintiff's allegations." *Id.*
9   (*citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Additionally, "[o]nce challenged, the
10  party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v.*
11  *United States*, 586 F.3d 683, 685 (9th Cir. 2009).  Notably, via "affidavits or other evidence
12  necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone*,
13  373 F.3d at 1039 (citing Savage, 343 F.3d at 1039 n. 2).

14         What the United States fails to disclose, however, is the remaining language from the
15  aforementioned cases that it did not reference involving jurisdictional challenges when, as here,
16  "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction
17  is dependent on the resolution of factual issues going to the merits' of an action." *Id.* (*quoting*
18  *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983); *Augustine v. United*
19  *States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).  "The question of jurisdiction and the merits of an
20  action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction
21  of the federal court and the plaintiff's substantive claim for relief.'" *Id.*; *see also Thornhill*
22  *Publ'g Co. v. Gen. Tel. Co.*, 594 F.2d 730, 734 (9t h Cir. 1979) ("[W]hen a statute provides the
23  basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive
24  claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure
25  to state a claim is proper only when the allegations of the complaint are frivolous.").  Such is the
26  case here with regard to Plaintiffs' FTCA claims and the absence of probable cause to arrest,
27  detain and prosecute Mr. Engel and the Tier 2 Plaintiffs.

28

1    As the Ninth Circuit has repeatedly held, "[j]urisdictional dismissals in cases premised on

2    federal-question jurisdiction are exceptional, and must satisfy the requirements specified in *Bell*

3    *v. Hood*, 327 U.S. 678 (1946)." *Id.* (*quoting Sun Valley Gas, Inc.*, 711 F.2d at 140.  Notably,

4    since Plaintiffs' FTCA Claims are not "immaterial," "made solely for the purpose of obtaining

5    federal jurisdiction" or "are wholly insubstantial and frivolous," the Government's facial

6    jurisdictional challenge is misplaced.

7         A.    The Relevant Factual Background Regarding the Absence of Probable Cause to
               Arrest, Detain and Prosecute and the Unauthorized / Illegal Nature of the
8              Government's 2014 Cattle Impoundment Operation

9    As detailed in undersigned counsel's Declaration (Exhibit A), the factual issues relevant

10   to the instant Motions and the absence of probable cause to arrest, detain and prosecute

11   Mr. Engel and the Tier 2 Plaintiffs rests not with the Government's self-professed justification

12   for its war against Cliven Bundy or its recitation of the Treaty of Guadalupe Hidalgo of 1848.

13   Instead, the focus is on: (a) the Government's willful failure to comply with mandatory statutory

14   notice requirements as a precursor to initiating its rogue 2014 Cattle Impoundment Operation;

15   (b) the false narrative it provided to the Grand Jury, the District Court, Mr. Engel, the Tier 2

16   Plaintiffs and the Juries in the Tier 3 and Tier 1 trials; (c) its knowing and intentional use of

17   fabricated evidence; and (d) its purposeful withholding, suppression / non-disclosure and

18   destruction of exculpatory *Brady* materials (all of which remain in the sole custody, possession

19   and control of the United States).  Accordingly, a resolution of the subject-matter jurisdictional

20   issue is inextricably intertwined with, and dependent upon, a resolution of the merits of

21   Plaintiffs' FTCA claims and the absence of probable cause.

22   Pursuant to 28 U.S.C. § 1346(b), "federal district courts have jurisdiction over a certain

23   category of claims for which the [United States] has waived its sovereign immunity and

24   'render[ed]' itself liable," including, without limitation, "'claims that are:  [1] against the United

25   States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death

26   [4] caused by the negligent or wrongful act or omission of any employee of the Government

27   [5] while acting within the scope of his office or employment, [6] under circumstances where the

28   United States, if a private person, would be liable to the claimant in accordance with the law of

the place where the act or omission occurred.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (*quoting* 28 U.S.C. § 1346(b)). To that end, "[a] claim comes within this jurisdictional grant – and thus is 'cognizable' under § 1346(b) – if it is actionable under § 1346(b). *Id.* (*citing Loeffler v. Frank*, 486 U.S. 549 (1988). "And a claim is actionable under § 1346(b) if it alleges the six elements outlined above." *Id.* In this regard, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* is the exclusive remedy for tort actions against a Federal agency (28 U.S.C. § 2679(a)) and against Federal employees who commit torts while acting within the scope and course of their employment (28 U.S.C. § 2679(b)(1)).

As set forth in Plaintiffs' Complaints, various Government Employees[10] engaged in certain tortious acts in their official capacities – tortious conduct that was performed while they were "acting within the scope of [their official] office[s] or employment at the time of the incident out of which the [Plaintiffs'] claim[s] arose." O'Shaughnessy at ¶¶ 139 - 140; Engel at ¶¶ 111 - 112. Accordingly, the United States is solely liable for that conduct as mandated by 28 U.S.C. § 2679(d)(2)) and the Federal Employees Liability Reform & Tort Compensation Act of 1988 ("Westfall Act"). O'Shaughnessy at ¶ 140; Engel at ¶ 112. Similarly, Plaintiffs' exclusive remedy for their tort-based claims against the Government Employees' employers (i.e., the DOJ, DOI, BLM and FBI) is the United States. O'Shaughnessy at ¶ 141; Engel at ¶ 113; *see also* 28 U.S.C. § 2679(a). To that end, 28 U.S.C. § 2680(h) expressly provides that the United States is also liable for certain intentional torts that are based on the "acts or omissions" of an "investigative or law enforcement officer" and include "[a]ny claim arising out of ... false imprisonment, false arrest, [and] malicious prosecution ...." O'Shaughnessy at ¶ 142; Engel at ¶ 114; *see also Millbrook v. U.S.*, 569 U.S. 50, 52 (2013) (*citing* 28 U.S.C. § 2680(h); *Levin v. United States*, 568 U.S. 503 (2013).

---

[10]    The Government Employees include, without limitation, Assistant United States Attorneys Nadia Ahmed, Steven Myhre and Daniel Bogden; FBI Special Agent Joel Willis; and BLM Special Agent in Charge ("SAC") Daniel P. Love, and Officers Rand Stover, Mark Brunk and Kent Kleman). O'Shaughnessy at ¶ 16; Engel at ¶ 5.

1. <u>The Government's Unauthorized & Unlawful 2014 Cattle Impoundment Operation</u>

Pursuant to the Federal Land Policy and Management Act of 1976 ("FLPMA"), the Bureau of Land Management ("BLM") assists the Secretary of the Interior with managing the public lands under principles of multiple use and sustained yield. Marquiz Dec., Exhibit A, at ¶ 10.   To that end, the BLM is responsible for, among other things, "Range Management," including, without limitation, the collection of grazing fees (43 USC 1751) and the issuance of grazing leases and permits (43 USC 1752) as provided via the Taylor Grazing Act of 1934. *Id.* at ¶ 11.

When unauthorized grazing use has occurred on federal lands, the United States is required to follow a very specific statutory procedure before any seizure and impoundment operation can occur as mandated by 43 CFR 4150 *et seq.*– a procedure that the United States followed for an abandoned enforcement action in 2012, but <u>*one which it knowingly did not follow for its 2014 Cattle Impoundment Operation*</u>, rendering same unauthorized and unlawful. *Id.* at ¶ 12; *see also* 43 CFR 4150.1 to 4150.5.  Specifically, when, as here, the owner of trespassing livestock is known, "<u>***[a] written notice of intent to impound shall be sent via certified mail or personally delivered to the owner or his agent, or both***</u>." *Id.* at ¶ 12(c); *see also* 43 CFR 4150.4-1(a) (<u>Notice of Intent to Impound</u>) (Emphasis Added).  Further, "[t]he written notice shall indicate that unauthorized livestock on the specified public lands or other lands under [BLM] control, or both, may be impounded any time after 5 days from delivery of the notice." *Id.*

The United States, seeking to enforce a Judgment it obtained in 1998 against Cliven Bundy (and awarding monetary damages via a 1999 amendment - hereinafter "Bundy I") and obtain other relief as to New Trespass Lands, initiated another lawsuit against Cliven Bundy on May 14, 2012. *Id.* at ¶ 13.  In that matter, the United States prevailed on a motion for summary judgment (receiving a permanent injunction against Cliven Bundy as to the New Trespass Lands, an Order compelling him to remove his livestock from the New Trespass Lands within 45 days, and authorizing the United States to seize and remove to impound any Bundy cattle after that

time, "***provided the United States ... provided notice to Bundy under the governing regulations of the United States Department of the Interior***." *Id.* at ¶ 14.

Although the United States was well-aware of its pre-impoundment notice obligations, it did not satisfy those conditions prior to its initiation of the 2014 Cattle Impoundment Operation, rendering same unauthorized and unlawful. *Id.* at ¶¶ 15 - 16. Notably, rather than serving written Notice of its Intent to Impound upon Cliven Bundy via certified mail as mandated by 43 CFR 4150.4-1(a) and the prior District Court Orders, the United States wrongfully published same in newspapers and posted same at certain post offices and courthouses – notice requirements that are only appropriate when the owner or agent are unknown. *Id.* The Government, nevertheless, misled the Tier 3 and Tier 1 juries, the District Court, Mr. Engel, the Tier 2 Plaintiffs by offering false evidence and sworn testimony that it had so complied. *Id.* at ¶¶ 15-19, 28.

      2.   <u>The United States Concealment of Government Snipers, Surveillance Materials, FBI Law Enforcement Operation Order, FBI 302 Reports, FBI TOC Logs & Threat Assessments</u>

The United States similarly misled the Tier 3 and Tier 1 juries, the District Court, Mr. Engel and the Tier 2 Plaintiffs regarding the existence and use of Government snipers in connection with its rogue 2014 Cattle Impoundment Operation (*Id*. at ¶¶ 20 - 25); it intentionally withheld / suppressed exculpatory *Brady* material which undermined the Government's Superseding Indictment and prevented Engel and the Tier 2 Plaintiffs from being able to pursue, among other matters, self-defense and defense of others jury instruction (*Id*. at ¶¶ 20 - 33); it destroyed / spoliated other evidence and wrongfully collected privileged attorney/client communications (*Id*.); and it wrongfully removed BLM Special Agent / Lead Investigator (Larry Wooten) from the case and his subsequent submission of a Whistleblower Complaint which exposed the Government's unlawful / unconstitutional conduct and the absence of probable cause to arrest, detain and prosecute the Bundy Defendants (*Id*. at ¶¶ 30 - 32). Once the existence of that evidence was revealed, it prompted the Bundy Defendants to file various motions to dismiss and the scheduling of multiple evidentiary hearings regarding same. *Id.* at ¶¶ 34 - 35.

In that regard, on December 20, 2017, Judge Navarro granted the Bundy Defendants' Motion for a Mistrial (Dkt. 2856) and various Motions to Dismiss (Dkt. Nos. 2916, 2924 and

2925) based upon multiple *Brady* violations, the Government's failure to timely disclose relevant evidence, its material misrepresentations regarding the existence of such evidence, and the irreversible impact that the Government's conduct had on the Bundy Defendants ability to fully defend themselves in the Underlying Action. *Id.* at ¶¶ 35 - 36.

On January 8, 2018, Judge Navarro held a Hearing to address whether the mistrial she declared and the dismissal of the Government's Superseding Indictment against the Tier 1 Defendants should be "with" or "without" prejudice. *Id.* at ¶ 37.  At that time, after considering the briefs submitted by the parties, Judge Navarro issued a scathing rebuke of the Government's egregious conduct, and dismissed the matter with prejudice. *Id.* at ¶¶38 - 39.  Specifically, Judge Navarro expressly held that the Government had engaged in "***flagrant prosecutorial misconduct***," "***outrageous conduct, amounting to a due process violation***" and a "***reckless disregard for [its] Constitution[al] obligations.***" *Id.* at ¶ 38 (W, X and AA).

Although the United States appealed Judge Navarro's Judgment of Dismissal to the Ninth Circuit, the Court of Appeals affirmed based upon the irrefutable prejudice caused by the Government's multiple *Brady* violations. *Id.* at ¶¶ 39 - 40.   Notably, the Ninth Circuit concluded that:

> "Central to the government's case were the allegations that they defendants intentionally lied about being surrounded by snipers as a ploy to gather armed supporters.  Had defendants been able to proffer a basis for genuinely believing that government snipers surrounded the Bundy Ranch, they potentially could have negated the government's scienter theory.  Surveying all of the withheld evidence – including surveillance-camera evidence, FBI '302' investigative reports regarding snipers, Tactical Operations Center (TOC) log records, and threat assessments – the panel held that the record amply supports the district court's conclusion that the defendants suffered substantial prejudice in not being able to prepare their case fully, refine their voir dire strategy, and make stronger opening statements." *Id.* at ¶ 41.
>
> The prosecution withheld facially exculpatory evidence that directly negated the government's theory that the defendants lied about fearing snipers.  The deliberate choices to withhold these documents were not cases of simple misjudgment, especially given that doubt about the helpfulness of evidence should be resolved in favor of disclosure. *Id.*

Judge Navarro's findings, along with those of the Ninth Circuit, constitute the law of this case – rulings that irrefutably apply and underscore the undeniable prejudice that Mr. Engel and

1  the O'Shaughnessy Plaintiffs were forced to endure as a direct, proximate and foreseeable cause

2  of the Government's egregious conduct.

3        **B.**     <u>Factual Allegations Asserted in Plaintiffs' Complaints</u>[11]

4       The Government also erroneously asserts Fed.R.Civ.P. Rule 8 arguments regarding the

5  sufficiency of Plaintiffs' claims.  Pursuant to Fed.R.Civ.P. Rule 8(a)(2), "[a] properly pled

6  complaint must provide a short and plain statement of the claim showing that the pleader is

7  entitled to relief." *See Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007). Although

8  detailed factual allegations are not required, Rule 8 "demands more than labels and conclusions"

9  or formulaic recitation of the elements of a cause of action." *Ascroft v. Iqbal*, 556 U.S. 662, 678

10  (2009), *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A review of Plaintiffs' Complaints

11  unequivocally confirms that Plaintiffs have validly stated claims for relief and advanced detailed

12  factual allegations supporting those claims.  As such, the United States challenges thereto are

13  misplaced.

14          **1.**    <u>Plaintiffs' Claims Were Timely Filed</u>

15       In its Motions, the Government baldly suggests that because the events giving rise to

16  Plaintiffs' false arrest, false imprisonment, malicious prosecution, intentional infliction of

17  emotional distress, loss of consortium and theft claims occurred more than two years before their

18  submission of SF-95 claims and, as a result, their claims are time-barred by Nevada Revised

19  Statute 11.190(4).  In advancing its limitations arguments, however, the Government expressly

20  ignores governing precedent in this Circuit as to the accrual date for those claims.

21       "Generally a claim accrues when the plaintiff knows, or in the exercise of reasonable

22  diligence should know, of both the injury and its cause." *Dyniewicz v. United States*, 742 F.2d

23

24          [11]    With regard to Defendant's argument that the fictitious Defendants identified in

25  the Plaintiffs' Complaints should be dismissed, Plaintiffs agree that the "Does" and "Roes"
referenced therein should be dismissed as the United States is the only proper Defendant in this

26  action.

27          Plaintiffs also agree that their references to damages for libel or slander based

28  upon their placement and maintenance on "no fly lists" and "prohibited persons list for
purchasing firearms" should also be dismissed as any such claim is precluded by § 2680(h) of the
FTCA.

484, 486 (9th Cir. 1984).  In this Circuit, however, claims for false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, loss of consortium and theft / conversion do not accrue until after a criminal defendant is released from custody or otherwise acquitted in a criminal trial. *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996).  In particular, "[e]quitable tolling is available in suits against the United States absent evidence that Congress intended the contrary." *Id.* (*citing Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).  In particular, "[n]othing in the FTCA indicates that Congress intended for equitable tolling not to apply[; h]ence, equitable tolling is available for FTCA claims in the appropriate circumstances ...." *Id.*

As detailed in the O'Shaughnessy Plaintiffs' Complaint, the criminal charges asserted against Plaintiffs Joseph O'Shaughnessy, Jason Woods, Mel Bundy and Dave Bundy were dismissed on February 7, 2018 and they were released from custody that same day. O'Shaughnessy at ¶ 128.  These Plaintiffs, in turn, timely and properly submitted claims for Damage, Injury or Death to the United States and its requisite agencies (i.e., the FBI, DOI / BLM and the DOJ) on or about February 3, 2020, including, without limitation, an administrative tort claim demand package to the U.S. Department of Justice, Civil Division, Torts Branch, FTCA Section. *Id.* at ¶ 132.  Because Plaintiffs' prior action was filed before their administrative remedies had been exhausted, his Honor dismissed same without prejudice and Plaintiffs subsequently filed the instant O'Shaughnessy action (Dkt. 1).  During the pendency of the prior action and during their exhaustion of administrative remedies period, said Plaintiffs' FTCA claims were equitably tolled.[12] *U.S. v. Wong*, 575 U.S. 402, 412 (2015) (*citing Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95 (1990)).  Notably, on August 31, 2022, the U.S. Department of Justice confirmed Plaintiffs' exhaustion of their administrative remedies, the United States denial of their FTCA claims and the appropriateness of filing the present lawsuit. Marquiz Dec., Exhibit A, at ¶ 63.

---

[12]     Although the U.S. Department of Justice acknowledged that it had received Plaintiffs' FTCA claims by February 6, 2020, his Honor dismissed Plaintiffs' FTCA claims in the prior action (i.e., 2:20-cv-00268) for Plaintiffs' failure to exhaust administrative remedies. *See* Order (Dkt. 72).

Similarly, as detailed in Plaintiff Engel's Complaint, the United States voluntarily moved to dismiss all further proceedings against him, and on September 10, 2020, he was released from custody. Engel at ¶ 3, FN 1, ¶ 99.  Mr. Engel also timely and properly submitted claims for Damage, Injury or Death to the United States and its requisite agencies (i.e., the FBI, DOI / BLM and the DOJ) on or about August 28, 2021, including, without limitation, an administrative tort claim demand package to the U.S. Department of Justice, Civil Division, Torts Branch, FTCA Section which was received by the U.S. Department of Justice on September 8, 2021. *Id.* at ¶ 104.  Because Plaintiffs' prior action was filed before his administrative remedies had been exhausted, his Honor dismissed same without prejudice and Plaintiff subsequently filed the instant action (Dkt. 1).  During the pendency of the prior action and during his exhaustion of administrative remedies, Mr. Engel's FTCA claims were also equitably tolled.[13] *U.S. v. Wong*, 575 U.S. 402, 412 (2015) (*citing Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95 (1990)).  On August 31, 2022, the U.S. Department of Justice also confirmed Mr. Engel's exhaustion of his administrative remedies, the United States formal denial of his FTCA claims and the appropriateness of filing his present lawsuit. Marquiz Dec., Exhibit A, at ¶ 64.

Based upon the foregoing, Plaintiffs' FTCA claims are properly before this Court and, as such, the Government's jurisdictional challenges thereto should be summarily denied.

      2.   <u>Plaintiffs' Complaints Irrefutably Allege Facts Detailing the Absence of Probable Cause</u>

In its Motions, the Government baldly suggests that Plaintiffs have failed to allege the absence of probable cause to support their false arrest, false imprisonment and malicious prosecution claims.  As detailed in Plaintiffs' Complaints, the requisite elements necessary to validly state causes of action for false arrest,[14] false imprisonment[15] and malicious prosecution[16]

---

[13]    Although the U.S. Department of Justice acknowledged that it had received Plaintiffs' FTCA claims by February 6, 2020, his Honor dismissed Plaintiffs' FTCA claims in the prior action (i.e., 2:20-cv-00268) for Plaintiffs' failure to exhaust administrative remedies. *See* Order (Dkt. 72).

[14]    In Nevada, to establish false arrest, 'a plaintiff must show the defendant instigated or effected an unlawful arrest." *Jones v. Las Vegas Metropolitan Police Dept.*, 2011 WL 13305450 at *3 (D.Nev. 2011) (*quoting Nau v. Sellman*, 757 P.2d 358, 260 (Nev. 1988)).  To that end, Plaintiffs have affirmatively alleged that Government Employees fabricated evidence,

1   have been irrefutably identified, along with factual averments (evidence which is part of the

2

3   suborned and provided perjurious testimony, and egregiously withheld and destroyed exculpatory
4   evidence so that they could erroneously secure Grand Jury Indictments upon which the false
    arrest warrants were issued against the Plaintiffs Joseph O'Shaughnessy, Jason Woods, Mel
5   Bundy, Dave Bundy and Todd Engel. O'Shaughnessy at ¶ 143.A; Engel at at ¶ 115.A. Plaintiffs
    have further alleged that, as a direct, proximate and foreseeable cause of the Government
6   Employees' tortious acts related to the instigation or effectuation of the unlawful arrest of
    said Plaintiffs (i.e., those acts performed in their official capacity, scope and employment with
7   the DOJ, DOI/BLM and FBI), the United States is, and remains, liable therefor. *Id.*

8        [15]    In Nevada, "[f]alse imprisonment is an unlawful violation of the personal liberty
    of another, and consists in confinement or detention without legal sufficient authority." NRS
9   200.460. "To establish false imprisonment of which false arrest is an integral part, it is ...
    necessary to prove that the person be restrained of his liberty under probable imminence of force
10  without any legal cause or justification." *Jones*, 2011 WL 13305450 at *3 (*quoting Hernandez v.
    City of Reno*, 634 P.2d 668, 671 (Nev. 1981). "Thus, 'an actor is subject to liability to another
11  for false imprisonment 'if (a) he acts intending to confine the other ... within the boundaries fixed
    by the actor, and (b) his act directly or indirectly results in a confinement of the other, and (c) the
12  other is conscious of the confinement or is harmed by it.'" *Id.* (*quoting* Restatement (Second) of
    Torts § 35 (1965)). Plaintiffs, here, have affirmatively alleged that Plaintiffs Joseph
13  O'Shaughnessy, Jason Woods, Mel Bundy, Dave Bundy and Todd Engel were unlawfully
    detained, imprisoned and held in-custody by the United States (23 months for the O'Shaughnessy
14  Plaintiffs and 54 months for Engel), mostly at a sweltering federal-contractor prison in Pahrump,
    Nevada and in Lompoc, California for Engel. O'Shaughnessy at ¶ 143.B; Engel at at ¶ 115.B.
15  Plaintiffs have further alleged that, as a direct, proximate and foreseeable cause of those tortious
    acts related to said Plaintiffs' incarceration (i.e., acts performed by the Government Defendants
16  in their official capacity, scope and employment with the DOJ, DOI/BLM and FBI), those acts: (a)
    were performed with the intention of confining said Plaintiffs to prison; (b) they directly or
17  indirectly resulted in said Plaintiffs' confinement; and (c) all such Plaintiffs were conscious of
    that unlawful confinement. *Id.* As a result, the UNITED STATES is, and remains, liable
18  therefor.

19

20       [16]    In Nevada, "[a] person who maliciously and without probable cause therefor,
    causes or attempts to cause another person to be arrested or proceeded against for any crime of
21  which that person is innocent" is liable for malicious prosecution. NRS 199.310. In this regard,
    to state a claim for malicious prosecution under Nevada law, a Plaintiff must allege: "(1) that the
22  defendant lacked probable cause to initiate a prosecution; (2) malice; (3) the prior criminal
    proceedings were terminated in his favor; and (4) Plaintiff suffered damages." *Anderson v.*
23  *United States*, 2019 WL 6357256 at *2 (D.Nev. 2019) (*quoting LaMantia v. Redisi*, 118 Nev. 27,
    30, 38 P.3d 877, 879 (Nev. 2002)). Plaintiffs here affirmatively alleged that the Government
24  Defendants' fabrication of evidence, elicitation and providing of perjurious testimony, along with
    the egregious withholding and destruction of exculpatory evidence so that they could wrongfully
25  secure Grand Jury Indictments and arrest warrants against Plaintiffs Joseph O'Shaughnessy,
    Jason Woods, Mel Bundy, Dave Bundy and Todd Engel establishes the absence of probable
26  cause, along with the malicious intent of said Government Employees' conduct. O'Shaughnessy
    at ¶ 143.C; Engel at at ¶ 115.C. Plaintiffs have further alleged that the United States dismissal,
27  with prejudice, of all charges against said Plaintiffs unequivocally establishes that the Underlying
    Action was terminated in said Plaintiffs' favor and, as a direct, proximate and foreseeable cause
28  thereof, Plaintiffs sustained damages. *Id.*

1   public record available to Plaintiffs in support of those claims. O'Shaughnessy at ¶¶ 33, 70, 72,

2   73, 84, 87, 95, 98, 130(c) and 143(c); Engel at ¶¶ 68, 71, 79, 102(c) and 115(c).  Most notably, as

3   a result of the Government Employees[17] knowing and intentional use of fabricated, "clarified"

4   and altered evidence; eliciting false and perjurious testimony; and withholding of exculpatory

5   evidence establishing Plaintiffs' innocence so that they could secure rogue Grand Jury

6   indictments to arrest, detain and prosecute said Plaintiffs. O'Shaughnessy at ¶¶ 33, 39, 40 - 42,

7   47, 53 - 54, 59 - 62, 63 - 82, 83 - 116, 117 - 128; Engel at ¶¶ 24, 29 - 32, 37, 44 - 45, 50 - 53, 54 -

8   77, 78 - 85, 86 - 100.

9           3.    <u>Extensive Discovery Must Be Completed, However, Before Plaintiffs Can</u>

10              <u>Fully Respond to Defendant's Probable Cause Arguments</u>[18]

11        [17]    Including, without limitation, Assistant United States Attorneys Nadia Ahmed,

12   Steven Myhre and Daniel Bogden; FBI Special Agent Joel Willis; BLM Special Agent in Charge

13   Daniel P. Love, and Officers Rand Stover, Mark Brunk and Kent Klemen. O'Shaughnessy at ¶ 16; Engel at ¶ 4.

14        [18]    Plaintiffs need to complete discovery also applies with regard to Plaintiffs'

15   intentional infliction of emotional distress ("IIED") claims and the O'Shaughnessy Plaintiffs' derivative loss of consortium claim.

16        In *Sheehan v. U.S.*, 896 F.2d 1168, 1172 (9th Cir. 1990), the Ninth Circuit Court

17   of Appeals expressly recognized the appropriateness of an intentional infliction of emotional

18   distress claim in FTCA actions.  To that end, in Nevada, "[t]he elements of a cause of action for intentional infliction of emotional distress are '(1) extreme and outrageous conduct with either

19   the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Dillard*

20   *Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 378, 989 P.2d 882, 886 (Nev. 1999).  Plaintiffs here have affirmatively alleged that the Government Employees' conduct (i.e., for those acts

21   performed in their official capacity, scope and employment with the DOJ, DOI/BLM and FBI) was: (1) extreme and outrageous and accomplished with the intent, or reckless disregard for,

22   causing Plaintiffs' emotional distress; (2) the Plaintiffs, in fact, have suffered, and continue to suffer from severe and extreme emotional distress; which (3) was actually or proximately caused

23   thereby. O'Shaughnessy at ¶ 143.D; Engel at ¶ 115.D.  As a result thereof, the United States is, and remains, liable for Plaintiffs' damages. *Id.*  In this regard, the District Court has already

24   determined that the Government's conduct was "outrageous," willful and intentional.  Thus, contrary to the Government's self-serving, conclusory remarks, this claim is independently valid

25   and extends to the wives and children of Mel Bundy and Dave Bundy.

26        For purposes of the O'Shaughnessy Plaintiffs loss of consortium claim, "Nevada law recognizes that '[a]n action for loss of consortium is derivative of the primary harm to the

27   physically injured spouse (parent)).'" *Fakoya v. County of Clark*, 2014 WL 5020592 at *9 (D.Nev. 2014) (*citing Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel.*

28   *Cnty. of Clark*, 122 Nev. 466, 134 P.3d 111 (Nev. 2006).  Therefore, discovery on the O'Shaughnessy Plaintiffs' other claims is required before an analysis of this claim can be made.

1    Defendant's bald assertion to the contrary, neither undersigned counsel nor Plaintiffs have

2    access to the Grand Jury transcripts, exhibits and other evidence admitted during those

3    proceedings. Marquiz Dec., Exhibit A, at ¶ 50.  In this regard, the Grand Jury testimony

4    referenced in Plaintiffs' Complaints was obtained from the O'Shaughnessy Plaintiffs' initial

5    Complaint filed in Case No. 2:20-cv-00268 – a pleading prepared and filed by said Plaintiffs'

6    former counsel, C. Benjamin Scroggins that became part of the public record. *Id.* at FN 27.

7    Importantly, since undersigned counsel was not engaged to represent any of the named Plaintiffs

8    herein until well *after* the Underlying Action had concluded against each of them, he does not

9    have (nor has he ever had) access to the non-public record, including, without limitation,

10   (a) documents designated by the United States as "Confidential" and non-public documents filed

11   with the Court; (b) various motions and exhibits thereto which remain filed "under seal;"

12   (c) copies of grand jury transcripts (despite its express inclusion in the underlying Protective

13   Order); (d) a complete listing of all documents and other evidence destroyed / shredded by the

14   United States and its agents / employees; and (e) exculpatory evidence which has *never* been

15   produced by the Government, including, those items that came to light during the Tier 1 trial and

16   formed the basis of Judge Navarro's scathing rubuke of the United States as constituting

17   "***flagrant prosecutorial misconduct***," "***outrageous conduct amounting to a due process***

18   ***violation***" and a "***reckless disregard for [its] Constitution[al] obligations.***" *Id.* at ¶¶ 48-50.

19   As a general rule, "[d]istrict courts employ a two-step approach when evaluating a

20   complaint's sufficiency on a Rule 12(b)(6) motion to dismiss." *Roche v. Barclays Bank*

21   *Delaware*, 2019 WL 4855141 (D.Nev. 2019).  "The court must first accept as true all well-pled

22   factual allegations [in the complaint], recognizing that legal conclusions are not entitled to the

23   assumption of truth." *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).  "The court

24   must then consider whether the well-pled factual allegations state a plausible claim for relief." *Id.*

25   "A claim is facially plausible when the complaint alleges facts that allow the court to draw a

26   reasonable inference that the defendant is liable for the alleged misconduct." *Id.*  In particular, "a

27   complaint must make direct or inferential allegations about 'all the material elements necessary

28

1  to sustain recovery under some viable legal theory.'" *LHF Productions, Inc. v. Kabala*, 2017 WL

2  4801656 at * 6 (D.Nev 2017) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)).

3          In determining whether a pleading states a claim upon which relief can be granted, the

4  Court should bear in mind that the Federal Rules have a "relaxed notice pleading standard" for

5  claims. *Twombly*, 550 U.S. at 575.  A complaint need only set forth "'a short and plain statement

6  of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the

7  grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence &*

8  *Coordination Unit*, 507 U.S. 163, 168 (1993) (*quoting Conley v. Gibson*, 355 U.S. 41, 47

9  (1957)); *see also* Fed.R.Civ.P. 8(a)(2)-(3) ("a short and plain statement of the claim showing that

10 the pleader is entitled to relief," and "a demand for the relief sought").  The liberal pleading

11 standard of the Federal Rules "contains 'a powerful presumption against rejecting pleadings for

12 failure to state a claim'." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997)

13 (*quoting Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)).  "The issue is not

14 whether the plaintiff ultimately will prevail but whether he is entitled to offer evidence in support

15 of his claims." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (*quoting Scheuer v. Rhodes*,

16 416 U.S. 232, 236 (1974)).

17         Consequently, the Court should not grant a motion to dismiss "for failure to state a claim

18 unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim

19 which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *see also Hicks v. Small*, 69 F.3d

20 967, 969 (9th Cir. 1995).  Further, where a complaint can be amended to state a claim for relief,

21 leave to amend, rather than dismissal, is the preferred remedy.[19]

---

23         [19]      To the extent the Court believes that factual averments necessary to support

24 Plaintiffs' affirmative claims are missing or otherwise inadequate, Plaintiffs respectfully request
   leave of Court to provide same.  In this regard, "[l]eave [to amend] shall be freely given when
   justice so requires." Fed.R.Civ.P. 15(a).  "In the absence of any apparent or declared reason –

25 such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to
   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

26 virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as
   the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Notably, "the

27 purpose of pleading is to facilitate a proper decision on the merits.'" *Id*. at 181-82 (*quoting
   Conley*, 355 U.S. at 48).  The strong policy permitting amendment is to be applied with "extreme

28 liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*quoting
   Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

As the accompanying Declarations of undersigned counsel (Exhibit A) and Warren Markowitz, Esq. (Exhibit B) reveal, extensive evidence exists regarding the absence of probable cause to arrest, detain and prosecute Mr. Engel and the Tier 2 Plaintiffs – evidence which is, and at all material times has remained, in the Government's sole custody possession and control.[20] Although undersigned counsel details multiple examples of judicial deception, fraud and intentional violations of Plaintiffs' constitutional rights, that publicly-available evidence is merely the tip of the iceberg.[21]   To that end, Plaintiffs need to complete discovery before they can fully respond to Defendant's Motions. *Id.* at ¶¶ 45 - 61.  In this regard, undersigned counsel's Declaration highlights the specific discovery Plaintiffs must obtain before they can fully respond to the "probable cause" inquiry, the anticipated timing for completion of that discovery, and the anticipated material facts that will be uncovered as a result thereof. *Id.*

While it is generally true that "[a] finding of probable cause by a judge, magistrate judge or grand jury 'constitutes *prima facie* – but not *conclusive* – evidence of probable cause," *Friedman v. United States*, 2020 WL 3027674 at *5 (*quoting Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004)), ***that presumption can be rebutted "by showing a criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct taken in bad faith*.**" *Id.* (*quoting Awabdy*, 368 F.3d at 1067) (Emphasis Added).  In particular, "[i]n judicial deception cases, such as this, "no reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause ...."

---

[20]      Unlike *Collins v. City of Colton*, 747 Fed.Appx. 467, 469 (9th Cir. 2018), a case decided after discovery on summary judgment, the record (as established by the underlying record), irrefutably confirms the misconduct at issue by the Government is not based solely on Plaintiffs' account thereof.  Notwithstanding that fact, the Government's failure to satisfy statutory pre-impoundment notice requirements, constituted significant, reliable and material evidence that obviated the existence of probable cause and, as such, was required to have been disclosed. Haupt v. Dillard, 17 F.3d 285, 290 n. 5 (9th Cir. 1994).

[21]      For example, Plaintiffs have presented evidence of Defendant's:  (a)unauthorized and unlawful 2014 Cattle Impoundment Operation, its failure to comply with statutory pre-impoundment notice requirements, judicial deception and subornation of perjury regarding same (Marquiz Dec., Exhibit A, at ¶¶ 3 - 19); (b) concealment of government snipers (*Id*. at ¶¶ 20 - 25); (c) wrongful conviction of Engel based upon same (*Id*. at ¶¶ 26 - 29); and (d) intentional withholding of exculpatory Brady materials, destruction / spoilation of evidence and collection of attorney-client telephone calls (*Id*., at ¶¶ 30 - 44).

1   *Chism v. Washington State*, 661 F.3d 380, 393 at FN 15 (9th Cir. 2011); *see also Yousefian v.*

2   *City of Glendale*, 779 F.3d 1010, 1014 ("Certainly, an officer may not ignore exculpatory

3   evidence that would 'negate a finding of probable cause'") (*quoting Borunda v. Richmond*, 885

4   F.2d 1384, 1389 (9th Cir. 1988)).  Such issues, however, are not resolved at the pleading stage;

5   they are resolved *after* discovery on summary judgment.  In this regard, Plaintiffs must be

6   afforded the opportunity to ascertain whether the United States, in connection with the Grand

7   Jury proceedings, disclosed, among other things:

8    A.   Its failure to comply with its statutory notice obligations as mandated by
9         43 CFR 4150 *et seq.* (e.g., providing Cliven Bundy with Notice of its Intent to Impound via certified mail as a precursor to that Operation) and, if not, the unauthorized and illegal nature of its 2014 Cattle Impound
10      Operation;

11    B.   The existence and use of Government snipers during that Operation (i.e., designated marksmen with higher ground / superior tactical positions
12      over the Toquop Wash, the Bundy Defendants and protestors at large);

13    C.   The United States' intentional suppression and non-production of exculpatory *Brady* materials[22] establishing the Bundy Defendants
14      innocence and pacificity, including, without limitation, evidence regarding the BLM's provocation of the Bundys and the appropriateness of self-
15      defense arguments based upon the United Status actual use of Government snipers during their 2014 Cattle Impoundment Operation and surveillance
16      of the Bundy Defendants;

17    D.   The United States' destruction and spoilation of relevant and material evidence, including, without limitation, audio and visual records from the
18      Cattle Impoundment Operation and surveillance of the Bundy Defendants; and

19

20    E.   The existence of BLM Special Agent / Lead Investigator Larry Wooten, his Whistleblower Complaint ("Wooten I" - highlighting the unlawful nature of the Government's conduct and the absence of probable cause to
21      arrest, detain and prosecute the Bundy Defendants) and follow-up memoranda (Wooten II - providing additional facts/details of the
22      Government's egregious and unlawful conduct in connection with the 2014 Cattle Impoundment Operation).

23   Marquiz Dec., Exhibit A, at ¶ 46.

24

25

26       [22]   Notably, the withheld evidence (produced by the Government during the Tier 1
27   trial *after* the Wooten I Whistleblower Complaint was uncovered) included, without limitation, surveillance-camera evidence, FBI "302" investigative reports regarding snipers, Tactical
28   Operations Center (TOC) log records, and threat assessments." *See* Ninth Circuit Opinion, Exhibit A-24.

**III.     The Government's Remaining Jurisdictional Challenges Fail**

        In their Motions, the Government myopically endeavors to group certain publicly-available facts identified in Plaintiffs' Complaints into distinct categories or purported "Fact Groups."  After baldly molding those facts into the Government's self-serving time-line, the United States baldly asserts that, "[p]ursuant to 28 U.S.C. § 2680, this Court does not have jurisdiction over FTCA lawsuits alleging certain common law torts," including "false imprisonment, false arrest and malicious prosecution." In advancing this argument, however, the Government expressly ignores that the United States is subject to such liability when, as here, "law enforcement investigations when a federal employee's tactics during an investigation had 'no legitimate policy rationale.'" *Myles v. United States*, 47 F.4th 1005, 1011 (9th Cir. 2022).[23] Notably, in Myles, the Ninth Circuit reversed the district court's dismissal of her malicious prosecution claim, was not barred by Section 2680(h), nor would that federal statute preclude claims for false imprisonment, false arrest and abuse of process, among others, against the federal government arising from the "acts or omissions of investigative or law enforcement officers." *Id.* at 1013 (*quoting* 28 U.S.C. § 2680(h)).  In particular, the Ninth Circuit expressly

---

        [23]    In *Myles*, the plaintiff alleged:

    "that federal government employees 'knowingly made false allegations to the [Orange County District Attorney's Office] regarding [Myles] conduct ... that directly led to her criminal prosecution'; 'instigated, encouraged, and were actively involved in causing [Myles] to be prosecuted ... on the felony charge of grand theft'; and 'committed perjury by lying under oath about the charge against [Myles].  She further allege[d] that, to ensure the criminal case against her would be maintained, DHS officials tampered with witnesses, provided false statements to the OCDA, and fabricated evidence.  Myles also alleged that the DHS officials 'did not have probable cause nor did they reasonably believe that [Myles] was guilty of the charge against her.'  Their purpose was to retaliate against [Myles]' because she had reported internally that she was again experiencing national origin-based harassment in the workplace."

47 F.4th at 1011 - 1012.  Ironically, the United States similarly challenged the factual averments of Myles complaint, suggesting that "she had failed to sufficiently allege malice or lack of probable cause. *Id.* at 1014.  The Ninth Circuit, rejected that challenge and expressly noted that "[a]t this stage of the proceeding — in which all uncontroverted factual allegations in the complaint must be taken as true and all factual disputes ... resolved in Myles's favor, *see Puri v. Khalsa*, 844 F.3d 1152, 1157 (9th Cir. 2017) – Myles has alleged sufficient facts plausibly to support her malicious prosecution claim." *Id.* (*citing Lunsford v. Am. Guar. & Liab. Ins. Co.*, 18 F.3d 653, 655 (9th Cir. 1994), *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 728 P.2d 1202 (1986)).

22

1   held that Congress's goal in passing the 1973 amendment was to deter the designated federal

2   agents from committing intentional torts and to ensure that victims of intentional torts would be

3   adequately compensated for their injuries." *Id.* (*citing* 119 Cong. Rec. 38969).  To that end, the

4   Ninth Circuit concluded "that in malicious prosecution cases in which the plaintiff alleges that an

5   investigative or law enforcement official fabricated evidence, tampered with witnesses, lied

6   under oath, or otherwise knowingly offered false testimony to induce criminal charges against the

7   plaintiff, the discretionary function exception does not shield the United States government from

8   liability as such misconduct does not constitute a policy judgment susceptible to social,

9   economic, or political analysis." *Id.* at 1014.

10          Thus, Plaintiffs' false arrest, false imprisonment and malicious prosecution claims are

11   properly before this Court and apply to all federal employees who engaged in investigative or law

12   enforcement activities, including, without limitation, the FBI, BLM and AUSAs involved.  While

13   it is generally true that "federal prosecutors, as advocates, normally enjoy near absolute immunity

14   from lawsuits over their conduct,"[24] when, as here, "prosecutors abandon the confines of their

15   offices and assume the role of an investigator, they are exposed to the same liability which

16   attaches to any officer or investigator for performing that investigative function."[25]  To that end,

17   AUSAs Bogden, Myhre and Ahmed are not immune from these claims due to their preparation,

18   instruction, and direction of others to prepare fabricated investigative documents that would be

19

20          [24]     *See Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *Fry v. Melaragno*, 939 F.2d
832, 834, 837 (9th Cir. 1991).  "The Supreme Court has established several principles for
21   analyzing a prosecutor's claim of absolute immunity." *Milstein v. Cooley*, 257 F.3d 1004, 1008
(9th Cir. 2001).  "First, immunity decisions are based on 'the nature of the function performed,
22   not the identity of the actor who performed it.'" *Id.* (quoting *Kalina v. Fletcher*, 522 U.S. 118,
127 (1997)).  "'[T]he actions of a prosecutor are not absolutely immune merely because they are
23   performed by a prosecutor.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

24          [25]     Courts generally "take a functional approach when determining whether a given
25   action is protected by prosecutorial immunity." *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th
Cir. 2018).  "In applying [that] approach, [courts] distinguish between acts of advocacy, which
26   are entitled to absolute immunity, and administrative 'police-type' acts which are not." *Id.*   In
particular, "[t]o qualify as advocacy, an act must be 'intimately associated with the judicial phase
27   of the criminal process.'" *Id.* (quoting *Imbler*, 424 U.S. at 430); *see also Buckley*, 509 U.S. at
273-74 ("A prosecutor's administrative duties and those investigatory functions that do not relate
28   to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not
entitled to absolute immunity."); *Burns v. Reed*, 500 U.S. 478, 494-496 (1991).

1   used in their rogue prosecution against Engel and Tier 2 Plaintiffs in violation of law and their

2   constitutional and due process rights. *See* O'Shaughnessy at ¶ 54; Engel at ¶ 45; *see also*

3   *Buckley*, 509 U.S. at 262-63 (absolute immunity denied "to prosecutors who were sued for

4   fabricating evidence 'during the early stages of the investigation' where 'police officers and

5   assistant prosecutors were performing essentially the same investigatory functions'").

6   **IV.   Plaintiff Engel's Theft / Conversion Claim Are Properly Before This Court**

7        Plaintiff Engel's theft / conversion claim is not barred by the applicable statute of

8   limitation nor otherwise prohibited from coverage under the FTCA.  Notably, since these claims

9   are subject to a three (3) year statute of limitation under Idaho Statute 5-218(3) ("[a]n action for

10  taking, detaining or injuring any goods or chattels, including actions for the specific recovery of

11  personal property), the claim did not accrue until he was released from custody on September 10,

12  2020, and are not barred by Section 2680(h). *Chopp Computer Corp. v. U.S.*, 5 F.3d 1344, 1347

13  (9t h Cir. 1993) (*quoting Nottingham, Ltd. v. United States*,  741 F.Supp. 1447, 1448-49

14  (C.D.Cal. 1991) (analogizing a conversion to a trespass, which the Supreme Court has

15  determined gives rise to FTCA liability, notwithstanding that wrongful intent is not an element of

16  trespass) (*citing Hatahley v. United States*, 351 U.S. 173, 181 (1956)).

17       While Mr. Engel appreciates the Government's need to protect or otherwise shield the

18  identity of its federal agent / confidential informant in public records, that need does not

19  eliminate Mr. Engel's legitimate theft / conversion claim nor the Government's obligation to

20  account for the location of his stolen personal property.  Did the Government seize same as

21  evidence for use in the Underlying Action and is it currently the Government's custody,

22  possession or control?; Does the federal agent / confidential informant have possession of same

23  or has it been logged into evidence locker at some federal facility?; If so, where is that property

24  currently and when will it be returned?  The Government's attempt to side-step its knowing and

25  intentional deprivation of Mr. Engel's personal property should not be condoned.  Mr. Engel has

26  validly stated a claim for theft / conversion and must be permitted the opportunity to secure the

27  return of that property or its $200,000 estimated value. Engel at ¶ 115.E.

28

**V.    Conclusion**

Based upon the foregoing, Plaintiffs respectfully request that Defendant's Motion to Dismiss (O'Shaughnessy Dkt. 26; Engel Dkt. 19) be summarily denied as a matter of law; that Plaintiffs be afforded the opportunity to complete necessary discovery based upon their inability to fully respond to the arguments raised in Defendant's Motions; and, if necessary, for leave to amend their Complaint should this Court believe that additional averments are necessary to further substantiate their affirmative claims for relief.

RESPECTFULLY SUBMITTED this 27th day of March, 2023.



By: /s/ Craig A. Marquiz, Esq.
Craig A. Marquiz, Esq.
3088 Via Flaminia Court
Henderson, NV 89052

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 27th day of March, 2023, he electronically filed Plaintiffs' Consolidated Oppositions to Defendants Motions to Dismiss with the Clerk of the Court with a copy of same electronically served upon the following counsel of record:

Craig A. Marquiz, Esq.
Craig A. Marquiz, Esq.